**SEAN C. WAGNER** (*Pro Hac Vice Forthcoming*)
Sean.Wagner@wagnerhicks.law
**ABBEY M. KRYSAK** (*Pro Hac Vice Forthcoming*)
Abbey.Krysak@wagnerhicks.law
**MEAGAN L. ALLEN** (*Pro Hac Vice Forthcoming*)
Meagan.Allen@wagnerhicks.law
**WAGNER HICKS PLLC**
831 East Morehead Street, Suite 860
Charlotte NC 28202
Tel: (704) 705-7538; Fax: (704) 705-7787

**BENJAMIN J. NAYLOR (S.B.N.: 023968)**
Ben@burnsbarton.com
**BURNSBARTON PLC**
2201 East Camelback Road, Ste. 360
Phoenix, AZ 85016
Tel: (602) 753-4500; Fax: (602) 428-7012

Attorneys for Defendants
**GOLDWATER BANK, N.A.**

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| John Feins, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>vs.<br><br>Goldwater Bank, N.A.,<br><br>*Defendant.* | Case No. _____<br><br>(formerly Maricopa County Superior Court No.: CV2022-005047)<br><br>**NOTICE OF REMOVAL OF CLASS ACTION**<br><br>[28 U.S.C. §§ 1332(d), 1446, 1453] |

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332(d), 1446, and 1453, Defendant Goldwater Bank, N.A. ("Goldwater"), contemporaneously with the filing of this Notice, is effecting the removal of the action described below from the Superior Court of the State of Arizona for the County of Maricopa to the United States District Court for the District of Arizona.

1. On or about April 20, 2022, Plaintiff John Feins ("Plaintiff") commenced a purported class action in the Superior Court of the State of Arizona for the County of Maricopa entitled *John Feins, individually and on behalf of all others similarly situated, vs. Goldwater Bank, N.A.,* Case No. CV2022-005047 (the "Action"). Attached hereto as **Exhibit A** are true and correct copies of the Summons and Complaint, State Civil Case Cover Sheet, and Certificate of Compulsory Arbitration (collectively, the "Complaint"). Attached hereto as **Exhibit B** is a true and correct copy of the Proof of Service of Summons on Goldwater, which was filed on May 11, 2022 ("Proof of Service").

2. Exhibits A and B constitute all the process, pleadings, notices and orders delivered to any party in the Superior Court action, and are hereby incorporated by reference.

3. The Action consists of putative class claims. Goldwater disputes the allegations and believes the Complaint lacks merit, denies that Plaintiff or the putative class members have been harmed, and denies that any discernible class exists. Nevertheless, as set forth below, the claims provide sufficient basis for removal.

4. On May 9, 2022, Goldwater was personally served with the Complaint via its registered agent for service of process. (Ex. B, Proof of Service). Accordingly, this Notice of Removal is timely, as it is filed within thirty (30) days of service of the Complaint on the last-served Defendant, Goldwater. *See* 28 U.S.C. § 1446(b)(2)(C).

5. The Action arises out of a data breach (the "Data Breach") involving Goldwater. With respect to both the individual and putative class claims, Plaintiff alleges that Goldwater failed to reasonably secure, monitor, and maintain the Personally Identifiable Information ("PII") provided to Goldwater by consumers, which Plaintiff alleges ultimately lead to the Data

Breach and the unauthorized access, download, exfiltration, and misuse of the PII by cyber criminals. (Compl. ¶¶ 1-2).

6. The Complaint sets forth individual and putative class claims against Goldwater for negligence, invasion of privacy, breach of implied contract, unjust enrichment, and violations of the New Mexico Unfair and Deceptive Trade Practices Act, N.M. Stat. §§ 57-12-2 – 57-12-10, *et seq,* and seeks compensatory and consequential damages, statutory damages, punitive damages, attorneys' fees, equitable relief, and injunctive relief. (Compl., Prayer for Relief, ¶¶ A-F).

7. This Action is removable pursuant to the Class Action Fairness Act of 2005 28 U.S.C. §§ 1332(d), 1446, and 1453 ("CAFA") because (1) the purported class action meets the CAFA definition of a class action; (2) the proposed class contains at least 100 members; (3) minimal diversity exists between the parties; and (4) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2-6).

### I. Covered Class Action

8. This Action meets the CAFA definition of a class action, which is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Although the Complaint was filed with the Superior Court of the State of Arizona for the County of Maricopa, Plaintiff specifically alleges in his Complaint that the Action is filed pursuant to "Rule 23 of the Federal Rules of Civil Procedure." (Compl. ¶¶ 96 [sic], 98 pp. 20, 23). Regardless, Rule 23 of the Arizona Rules of Civil Procedure is identical to Rule 23 of the Federal Rules of Civil Procedure. *Ferrera v. 21st Century N. Am. Ins. Co.*, 245 Ariz. 377, 380, 429 P.3d 1171, 1174 (Ct. App. 2018) (citations omitted). Thus, this Action meets the CAFA definition of a class action for purposes of removal, because it was filed under Rule 23 of the Federal Rules of Civil Procedure, or alternatively, Rule 23 of the Arizona Rules of Civil Procedure.

## II. Class Action Consisting of More Than 100 Members

9. The Complaint alleges that there are "tens of thousands" of purported class members. (Compl. ¶ 20). Accordingly, based on the putative class representative's allegation, the aggregate number of class members is greater than 100 persons for purposes of 28 U.S.C. § 1332(d)(5)(B).

## III. Minimal Diversity

10. Under CAFA, minimal diversity exists for purposes of federal court jurisdiction where any member of the purported class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2)(A). Defendant Goldwater is a national banking association with its headquarters and principal place of business in Phoenix, Arizona. (Compl. ¶ 19). A national association, for diversity jurisdiction purposes, is deemed to be a citizen of the state(s) in which it maintains its main office and its principal place of business. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). As such, Goldwater is a citizen of Arizona for purposes of diversity jurisdiction. While Goldwater is a citizen of Arizona, removal to federal court may be effectuated under CAFA "without regard to whether any defendant is a citizen of the State in which the action is brought." 28 U.S.C. § 1453(b).

11. Plaintiff is an individual who is a citizen and resident of the State of New Mexico. (Compl. ¶ 17). According to the Complaint, like Plaintiff, "many" of the purported "tens of thousands" of class members, "have different citizenship from Goldwater." (Compl. ¶ 20). Accordingly, based on the putative class representative's allegations, CAFA minimal diversity requirements are met for purposes of 28 U.S.C. § 1332(d)(2)(A).

## IV. Amount in Controversy

12. In addition to minimal diversity of citizenship, the amount in controversy is sufficient to support CAFA's jurisdictional prerequisites. Under CAFA, the claims of individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2), (d)(6). In determining the amount in controversy, courts first look to the complaint. *Ibarra v. Manheim*

*Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  While Goldwater disputes that it is liable to Plaintiff or any of the putative class members, or that Plaintiff or the putative class members suffered injury or incurred damages in any amount whatsoever, for purposes of satisfying CAFA's amount in controversy requirements, the face of the Complaint demonstrates that the amount in controversy reasonably exceeds $5,000,000.  Indeed, there are seven separate categories of relief sought by Plaintiff and the putative class members that, separately or combined, satisfy the requisite amount in controversy. More specifically, Plaintiff and the putative class members seek compensatory damages, consequential damages, statutory damages, punitive damages, attorneys' fees, equitable relief, and injunctive relief. (Compl., Prayer for Relief, ¶¶ A-F).

      **A.**     <u>**Compensatory and Consequential Damages**</u>

      13.    The amount in controversy with respect to compensatory and consequential damages alone reasonably exceeds $5,000,000.  Plaintiff, on behalf of the putative class members, does not specify damages, but claims that they exceed the Arizona State Court threshold of $10,000.  (Compl. ¶ 20).  The Complaint alleges that Plaintiff and the "tens of thousands" of putative class members seek compensatory and consequential damages for "(i) lost or diminished value of PII, (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII, (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued certainly increased risk to their PII . . . (vii) emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their PII; and (viii) the loss of the benefit of the bargain for the services that failed to provide reasonable and adequate data security measures."  (Compl. ¶¶ 13, 20).

      14.    Thus, if only 10,000 said consumers of the alleged "tens of thousands" suffered a mere $5,000 in the kind of injuries alleged by the putative class representative, the amount in controversy would equal $50,000,000—far in excess of CAFA's $5,000,000 jurisdictional requirement. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)

("[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). Indeed, if only 5,000 said consumers of the alleged "tens of thousands" suffered a mere $5,000 in alleged damages, the amount in controversy for consequential and compensatory damages alone would equal $25,000,000. Plaintiffs in data breach litigation have been awarded more solely for out-of-pocket costs incurred as a result of the data breach. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *1 (N.D. Cal. July 22, 2020), *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021) (court approves settlement awarding up to $25,000 per class member who incurred out-of-pocket costs as a result of data breach); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. Aug. 15, 2018) (court approves settlement awarding up to $10,000 per class member who incurred out-of-pocket costs as a result of the data breach). Therefore, the amount in controversy with respect to compensatory and consequential damages alone reasonably exceeds $5,000,000.

### B. Statutory Damages

15. Plaintiff also seeks statutory damages pursuant to New Mexico's Unfair and Deceptive Trade Practices Act, N.M. Stat. §§ 57-12-2 – 57-12-10, *et seq.*, which allows for an award of treble damages. If only 5,000 said consumers of the alleged "tens of thousands" suffered a mere $5,000 in the kind of injuries alleged by the putative class representative, and treble damages were awarded, the amount in controversy would equal $75,000,000—far in excess of CAFA's $5,000,000 jurisdictional requirement.

### C. Attorneys' Fees

16. The Court "must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 889 F.3d 785, 794 (9th Cir. 2018). Here, Plaintiff explicitly asserts entitlement to attorneys' fees on behalf of himself and the putative class members in the Complaint. (Compl., Prayer for Relief, ¶ E).

17. It can easily be foreseen that Plaintiff and the putative class members will seek attorneys' fees in excess of the $5,000,000 jurisdictional threshold. These fees can be substantial, particularly in cases involving allegations of large data breach class actions, such as this one, and if Plaintiff and the putative class members are successful, their attorneys' fees request will likely exceed $5,000,000, separate and apart from any other relief awarded by the Court. *See e.g.* Pl.'s Mem. in Supp. of Mot. for Prelim. Approval and to Direct Notice of Proposed Settlement to Class, *In re: Capital One Consumer Data Security Breach Litigation,* MDL No. 1:19-md-2915, ECF No. 2219 (Jan. 31, 2022) (settlement agreement confirming that plaintiff's may seek up to 35% of settlement amount for attorneys' fees or approximately $66,500,000); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *9 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded on other grounds*, 999 F.3d 1247 (11th Cir. 2021) (awarding $77,500,000 in attorneys' fees to class counsel); *In re Anthem, Inc. Data Breach Litig.,* 5:15-MDL-02617, 2018 WL 3960068, *16 (N.D. Cal. Aug. 17, 2018) (awarding $31.05 million in attorneys' fees to class counsel)*; In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* 2020 WL 4212811, at *1 (awarding $22,763,642.70 in attorneys' fees to class counsel).

18. Thus, the Court can reasonably conclude that Plaintiff and the putative class members attorneys' fees may exceed $5,000,000 if Plaintiff and the putative class members succeed on their claims and are entitled to statutory attorneys' fees.

**D.     Injunctive and Other Equitable Relief**

19. The amount in controversy with respect to the value of the injunctive and other equitable relief sought also exceeds $5,000,000. "In actions seeking declaratory or injunctive relief ... the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

20. Plaintiff and the putative class members seek "injunctive and other equitable relief" requiring Goldwater to, among other things, "engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including

simulated attacks, penetration tests, and audits on [Goldwater's] systems on a periodic basis . . . and requiring [Goldwater] to implement logging and monitoring programs sufficient to track traffic to and from [Goldwater's] servers; and for a period of ten (10) years, appointing a qualified and independent third-party assessor to conduct a SOC Type 2 attestation on an annual basis." (Compl., Prayer for Relief, ¶ C).

21. In addition, Plaintiff and the putative class members allege that Goldwater must implement sweeping changes to its cybersecurity controls and business practices. (Compl., Prayer for Relief, ¶ C). The value of the injunctive and equitable relief alone far exceeds CAFA's $5,000,000 jurisdictional prerequisite.

22. In fact, sweeping business practice changes in other data breach litigations have been valued as low as $66,000,000 per year, and as high as $1 billion dollars. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *9 (valuing business practice changes in conjunction with identity restoration services at a cost of $1 billion); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *10 (valuing defendant's pledge to employ 200 full-time security employees, align its information security program with the National Institute of Standards and Technology ("NIST") Cybersecurity Framework, and undertake annual third-party assessments to ensure compliance with that framework every year for four years beginning in 2019 at $66,000,000 annually); *In re Anthem, Inc. Data Breach Litig.,* 5:15-MDL-02617, 2018 WL 3960068, *8 (N.D. Cal. Aug. 17, 2018) (valuing agreement to engage independent consultant to conduct annual SOC 2 Type 2 assessment and extensive business practice changes as almost triple the amount of Anthem's prior spending on data security). The amount in controversy with respect to the injunctive and equitable relief sought far exceeds $5,000,000.

23. The Court therefore can conclude that Goldwater has met its burden by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 for purposes of federal court jurisdiction under CAFA.

24. For the foregoing reasons, this Court has original jurisdiction under CAFA because (1) the purported class action meets the CAFA definition of a class action; (2) the proposed class contains at least 100 members; (3) minimal diversity exists between the parties; and (4) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2-6).

25. Counsel for Goldwater certifies, pursuant to 28 U.S.C. § 1446(d), that, contemporaneously with the filing of this Notice, Counsel for Goldwater has provided to Plaintiffs through its counsel of record, and filed a copy with the Clerk for the Superior Court of Maricopa County Arizona, a copy of this Notice of Removal.

Dated: May 31, 2022

BURNSBARTON PLC

/s/ Benjamin J. Naylor
Benjamin J. Naylor, Esq.

AND

WAGNER HICKS PLLC

/s/ Sean C. Wagner
Sean C. Wagner, Esq. (*Pro Hac Vice Forthcoming*)
Abbey M. Krysak, Esq. (*Pro Hac Vice Forthcoming*)
Meagan L. Allen, Esq. (*Pro Hac Vice Forthcoming*)

ATTORNEYS FOR DEFENDANT GOLDWATER BANK N.A.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

COPIES were e-mailed and send via U.S. Mail on this 31st day of May 2022 to:

Cristina Perez Hesano
Perez Law Group, PLLC
7508 North 59th Avenue
Glendale AZ 85301
cperez@perezlawgroup.com

*Attorneys for Plaintiff*

*s/ Carolyn Galbreath*